IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COLETTE SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0161-WS-B |
| | ) |
| ROCCO VALLUZZO d/b/a | ) |
| R.B.T.A. INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion to Remand (doc. 3). The Motion has been briefed and is ripe for disposition.

**I.     Factual and Procedural Posture.**

On July 20, 2015, plaintiff, Collette Sims, filed suit against defendant, Rocco Valluzzo d/b/a R.B.T.A. Industries, Inc., in the Circuit Court of Baldwin County, Alabama. The Complaint alleges that R.B.T.A. owns and/or operates the Microtel Inn & Suites (the "Hotel") in Daphne, Alabama; and that defendant negligently or wantonly "caused or allowed the floor of the hotel to become in such condition that it was not reasonably safe." (Doc. 1, Exh. B, at 2.) According to the well-pleaded factual allegations of the Complaint, Sims fell and sustained injuries at the Hotel on July 19, 2014, because of the purportedly unsafe condition of the floor. (*Id.*) The Complaint chronicles Sims' damages as follows: (i) "She was bruised and contused and otherwise injured and damaged;" (ii) "She suffered injuries to her back, left knee, right knee, left shoulder, right shoulder and right foot and toe;" (iii) "She has experienced and continues to experience pain and suffering;" (iv) "She has experienced and continues to experience insomnia, emotional distress and mental anguish;" and (v) "She has incurred and continues to incur doctor, hospital, drug expenses." (*Id.*) On the strength of these allegations, Sims brought purely state-law claims against R.B.T.A. for wantonness and negligence.

The case proceeded into discovery in state court, including paper discovery and plaintiff's deposition. On March 17, 2016, some eight months after suit commenced, Sims'

counsel sent a demand letter to R.B.T.A.'s lawyer.  The letter indicated that Sims had tripped and fallen "over torn and frayed carpet in the hallway" of the Hotel; that she had suffered injuries to both shoulders, both knees, and the big toe on her right foot; that Sims was continuing to experience pain in her shoulders, as well as emotional distress and mental anguish; and that Sims had incurred medical bills of $19,353.22, plus lost wages of $9,156.00.  (Doc. 1, Exh. C.)  The March 17 letter concluded that Sims had authorized her lawyer to demand $295,000 in full and final satisfaction of her claims.  (*Id.*)

In light of the demand letter, R.B.T.A. filed a Notice of Removal (doc. 1) on April 15, 2016, thereby removing this action to this District Court.  Federal subject matter jurisdiction was predicated on the diversity provisions of 28 U.S.C. § 1332.  In particular, R.B.T.A. showed that there was complete diversity of citizenship between the parties (with Sims being a citizen of Louisiana for diversity purposes, and R.B.T.A. being an Alabama corporation with its principal place of business in Magnolia Springs, Alabama).[1]  To establish the amount in controversy, the Notice of Removal cites the March 17 demand letter.  Sims subsequently filed a Motion to Remand, hinging solely on the proposition that R.B.T.A. has failed to prove by a preponderance of the evidence that the amount in controversy exceeds the sum or value of $75,000.

## II.     The Amount in Controversy Issue.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction.  *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted).  Also, because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th

---

[1] A fair reading of the Complaint suggests that Sims intended for R.B.T.A. to be the only named defendant; however, there is some ambiguity inherent in the Complaint's recitation of the named defendant as "Rocco Valluzzo d/b/a R.B.T.A. Industries, Inc.," as to whether Valluzzo is also a defendant in the case.  To eliminate any uncertainty on this question as it relates to diversity jurisdiction, the Notice of Removal shows that Valluzzo (like R.B.T.A.) is an Alabama citizen for diversity purposes.

Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).

There being no federal question presented in the Complaint, R.B.T.A.'s Notice of Removal hinges on diversity of citizenship.  Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted).  "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

As the removing party, R.B.T.A. bears the burden of showing by a preponderance of the evidence that the requisite amount-in-controversy threshold is satisfied. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."); *Sammie Bonner Const. Co. v. Western Star Trucks Sales, Inc.*, 330 F.3d 1308, 1310 (11th Cir. 2003) ("Because Western Star sought removal to federal court, it bore the burden of proving that Bonner's claims satisfied the minimum amount in controversy requirement.").  That said, it is well settled that R.B.T.A. "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  Rather, R.B.T.A. may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted).  What R.B.T.A. may not do, however, is resort to "conjecture, speculation, or star gazing" to show that the jurisdictional threshold is satisfied. *Pretka*, 608 F.3d at 754.  In evaluating a removing defendant's jurisdictional showing, courts do not "suspend reality or shelve common sense," but instead "may use their judicial experience and

common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062 (citations omitted).

As described *supra*, R.B.T.A.'s Notice of Removal leans heavily on the March 17 letter in which Sims demanded the sum of $295,000 to settle her claims against R.B.T.A. Indeed, R.B.T.A. characterizes that demand letter as "other paper" pursuant to 28 U.S.C. § 1446(b)(3), from which R.B.T.A. first ascertained that this action had become removable. (*See* doc. 1, ¶¶ 18, 28.) In other words, defendant's position is that it could not discern that the amount in controversy exceeded $75,000 until it received the March 17 demand letter; thus, the amount-in-controversy issue, and the removability of this action, hinges on whether the March 17 demand letter (considered in concert with the allegations of the Complaint and other record evidence) is sufficient to meet R.B.T.A's burden of showing that it is more likely than not that the amount in controversy in this case exceeds § 1332's $75,000 minimum.

In her Motion to Remand, Sims points out that her "actual damages" consist of a subrogation lien in the amount of $13,463.51, copays and medical bills totaling $5,889.71, and lost wages of $9,156.00, for a grand total of $28,509.22, which is obviously far below the jurisdictional minimum. With regard to the March 17 demand letter, Sims cites authority for the proposition that such letters may be a mere "negotiating tool," rather than a clear-eyed appraisal of the value of a plaintiff's claims, and represents to the Court that she "is certainly willing to negotiate and decrease her demand substantially" if and when R.B.T.A. comes to the table for settlement negotiations. (Doc. 3, ¶¶ 6, 8.) Based on these observations and representations, Sims posits that R.B.T.A. has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs.

Obviously, the role of the March 17 demand letter looms large in the jurisdictional analysis here. The effect and significance of such demand letters are governed by well-settled legal principles. Without question, demand letters are relevant and may be considered in assessing whether the jurisdictional amount in controversy is satisfied. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("While [a] settlement offer, by itself, may not be determinative, it counts for something."). "However, it is equally true that the utility of such demands in the jurisdictional analysis varies widely depending on the circumstances." *Nationwide Property and Casualty Ins. Co. v. Dubose*, --- F. Supp.3d ----, 2016 WL 1448855, *3 (S.D. Ala. Apr. 12, 2016); *see also Montgomery v. Food Giant Supermarkets, Inc.*, 2014 WL

5307890, *2 (S.D. Ala. Oct. 16, 2014) (to determine jurisdictional weight afforded a demand letter, "courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other"). In *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279 (S.D. Ala. 2009), this Court explained that a settlement offer consisting of "puffing and posturing … is entitled to little weight in measuring the preponderance of the evidence." *Id.* at 1281. By contrast, a settlement offer furnishing "specific information" to support the demand suggests that the plaintiff is "offering a reasonable assessment" of the value of her claim, in which case the demand would be "entitled to more weight." *Id.*

The letter at issue here does not reach either end of the continuum of scenarios hypothesized in *Jackson*; however, it does tilt much closer to the "specific information" end of the spectrum than the "puffing and posturing" side. The March 17 letter specifically identified Sims' physical injuries arising from her fall at the Hotel as affecting both shoulders, both knees and one big toe; explained that at the time of such letter (nearly 20 months after the incident) Sims "continues to experience pain in her shoulders, emotional distress and mental anguish;" documented medical bills to date as totaling $19,353.22; and specified lost wages of $9,156.00. The reference to Sims' continuing pain in both shoulders is particularly insightful from a quantification of damages perspective, because it suggests either (a) that further medical treatment would be needed, or (b) that this incident left Sims with chronic pain that she will have to endure for the foreseeable future. Either way, Sims' "actual damages" rise well above $28,000 when these allegations are taken into account. Moreover, the significance of the March 17 letter is bolstered by the fact that it was not presented as an initial shot across the bow by a newly-retained lawyer in the immediate aftermath of the incident; rather, Sims' attorney sent the letter more than a year and half after Sims fell in the Hotel, and after eight months of state-court litigation (including paper discovery and Sims' deposition) had taken place. The circumstances under which Sims' demand letter was sent, as well as its contents, thus suggest that the March 17 demand was not mere puffing and posturing totally divorced from plaintiff's valuation, but was instead grounded in a reasonable assessment of how Sims valued her claim.[2]

---

[2] An important point to bear in mind is that the § 1332 amount-in-controversy threshold is $75,000, not $295,000. Stated differently, in order to afford substantial weight to the (Continued)

Several other considerations in the record lend support to that conclusion. For example, in her deposition on February 18, 2016, Sims testified that she still experiences "limited motion" and "constant pain" in her shoulders, such that "it doesn't feel like [she] had a surgery." (Doc. 5, Exh. A, at 56.) Sims also testified that one reason why she stopped going to the doctor for treatment of her shoulders was that she lacked health insurance. (*Id.* at 55.) That information suggests that Sims may yet receive substantial additional medical treatment for her injuries at the Hotel, raising the specter of large increases in medical bills, plus non-trivial sums for emotional distress and mental anguish. Additionally, it bears noting that Sims has a claim for punitive damages based on her allegations that R.B.T.A. was well aware of the "torn and frayed carpet in the hallway" that she says proximately caused her injury. That factor also must be weighed for § 1332 amount-in-controversy purposes. *See, e.g., Crocker v. Lifesouth Community Blood Centers, Inc.*, 2016 WL 740296, *3 (S.D. Ala. Feb. 23, 2016) ("plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendants have shown that the amount in controversy exceeds $75,000") (citation omitted).

In the aggregate, then, the court file reflects the following circumstances bearing on the amount in controversy: (i) to date, Sims has incurred out-of-pocket losses of $28,509.22; (ii) well into the lifespan of this case, long after the incident giving rise to the litigation took place, and after receiving substantial medical treatment, Sims sent a fairly detailed, specific demand letter to R.B.T.A. demanding $295,000 to settle her claims; (iii) as of February 2016, Sims continued to complain of constant pain and limited motion in her shoulders, and indicated that she would have sought out further medical treatment if she had health insurance; (iv) the Complaint seeks compensatory damages for such factors as pain and suffering, emotional distress and mental anguish; and (v) the Complaint also seeks punitive damages for Sims' wantonness claim. Putting all of these facts and circumstances together, the Court is satisfied that R.B.T.A. has met

---

March 17 demand letter in the jurisdictional inquiry, it is not necessary for the Court to conclude that the $295,000 figure recited therein is devoid of puffery, or that Sims' actual assessment of the valuation of her claims was, in fact, $295,000. Rather, all that is necessary to support § 1332 jurisdiction is for the Court to determine that defendant has shown by a preponderance of the evidence that, even after stripping away any puffery, the demand letter (taken in conjunction with the Complaint and the other facts and evidence of record) supports a determination that the amount in controversy actually exceeds $75,000. The undersigned readily does so.

its burden of showing by a preponderance of the evidence that the amount in controversy exceeds the sum of $75,000. That determination, coupled with the undisputed showing that Sims is of diverse citizenship from R.B.T.A. (and Valluzzo, for that matter), gives rise to diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thus, federal jurisdiction properly lies here, and the Notice of Removal is supported by subject matter jurisdiction.

### III.  Conclusion.

For all of the foregoing reasons, plaintiff's Motion to Remand (doc. 3) is **denied**.

DONE and ORDERED this 9th day of June, 2016.

                                            s/ WILLIAM H. STEELE
                                            CHIEF UNITED STATES DISTRICT JUDGE